IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA CLARK | ) | CASE NO. |
| 1319 Chestnut Grove Rd | ) | |
| Jackson, Ohio 44640 | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| CITY OF WELLSTON | ) | |
| 203 East Broadway | ) | **JURY DEMAND ENDORSED** |
| Wellston, Ohio 45693 | ) | **HEREIN** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Amanda Clark, by and through undersigned counsel, as her Complaint against

the Defendant, states and avers the following:

## PARTIES

1. Amanda Clark is a resident of the city of Jackson, county of Jackson, state of Ohio.

2. The City of Wellston is a municipality located in the county of Jackson, state of Ohio.

## JURISDICTION & VENUE

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Clark is alleging a

   Federal Law Claim under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

4. All material events alleged in this Complaint occurred in the county of Jackson.

5. This Court has supplemental jurisdiction over Clark's state law claims pursuant to 28 U.S.C. §

   1367 as Clark's state law claims, are so closely related to his federal law claims that they form

   part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Within 300 days of the conduct alleged below, Clark filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-00086 against Wellston.

8. On or about August 20, 2019, the EEOC issued and mailed a Notice of Right to Sue letter to Clark regarding the Charges of Discrimination brought by Clark against Wellston in EEOC Agency Charge No. 532-2019-00086.

9. Clark received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

10. Clark has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11. Clark has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

12. Clark is a former employee of Wellston.

13. On April 20, 2018, Clark began working for Wellston.

14. Wellston employed Clark as a full-time Water Treatment Plant Attendant.

15. Clark is female.

16. Clark is a lesbian.

17. Bill Shumate is the Service Director for Wellston.

18. Shumate is male.

19. Shumate is heterosexual.

20. Adam Peters is the Supervisor of Wellston's Water Treatment Plant.

21. Peters is male.

22. Peters is heterosexual.

23. Clark was the only female employee in her department.

24. Clark was the only lesbian in her department.

25. During her employment at Wellston, Clark experienced harassing remarks, including a co-worker yelling, "Homo."

26. On April 20, 2018, Shumate told Clark, "Don't talk about your lifestyle so much here… people won't understand." ("Lifestyle Comment.")

27. When Shumate made the Lifestyle Comment, he was referring to the fact that Clark is a lesbian.

28. Peters was present during the Lifestyle Comment.

29. Peters smiled in agreement when Shumate made the Lifestyle Comment.

30. Shortly after Clark began working for Wellston, Fayman Roberts assigned Clark approximately 25-hours of mandatory homework per week.

31. Roberts was responsible for training Clark.

32. Roberts is male.

33. Roberts told Clark that he was assigning the mandatory homework to Clark to study for future licensing exams necessary for Clark's employment at the Wellston Water Treatment Plant.

34. Roberts did not assign mandatory homework to male employees.

35. Roberts did not assign mandatory homework to heterosexual employees.

36. Similarly situated male employees were allowed to work at the Wellston Water Treatment Plant without passing the licensing exams.

37. On May 31, 2018, Peters and Clark opened the water plant at 5:00 am. ("May Plant Opening.")

38. During the May Plant Opening, Clark followed the startup procedure instructions Roberts had provided to her.

39. During the May Plant Opening, Peters verbally reprimanded Clark for allegedly improperly starting a machine.

40. After reprimanding Clark, Peters provided Clark with a different set of startup instructions.

41. On June 1, 2018, Peters and Clark again opened the water plant at 5:00 am. ("June Plant Opening.")

42. During the June Plant Opening, Peters told Clark you'll never be as fast as me because you're just a girl. ("Peters' Sexist Comment.")

43. On June 2, 2018, Peters asked Clark, "who are you married to? A woman? Who gave birth to your son?" ("Peters' Marriage Comment.")

44. After seeing a photograph of Clark's wife, Peters commented, "she is too pretty to be a lesbian." ("Peters' Pretty Lesbian Comment.")

45. Peters did not make comments similar to Peters' Sexist Comment, Peters' Marriage Comment, or Peters' Pretty Lesbian Comment to male employees.

46. Peters did not make comments similar to Peters' Sexist Comment, Peters' Marriage Comment, or Peters' Pretty Lesbian Comment to heterosexual employees.

47. On June 22, 2018, Clark complained to Melissa Humphreys.

48. Humphreys is a City Clerk for Wellston.

49. Clark complained to Humphrey about Shumate and Peters' conduct. ("First Gender Discrimination Complaint.")

50. Humphreys had a duty to report the First Gender Discrimination Complaint to Wellston.

51. Humphreys reported the First Gender Discrimination Complaint to Wellston.

52. Wellston was aware of the First Gender Discrimination Complaint.

53. Wellston has a policy to investigate reports of unlawful discrimination.

54. An investigation should include interviewing the complainant.

55. An investigation should include interviewing the subject of the complaint.

4

56. An investigation should include interviewing the subject of the reported discrimination.

57. An investigation should include interviewing witnesses to the reported discrimination.

58. An investigation should include getting a written statement from the complainant.

59. An investigation should include getting a written statement from the subject of the complaint.

60. An investigation should include getting a written statement from the subject of the reported discrimination.

61. In response to Clark's First Gender Discrimination Complaint, Defendant did not interview Peters.

62. In response to Clark's First Gender Discrimination Complaint, Defendant did not interview Shumate.

63. In response to Clark's First Gender Discrimination Complaint, Defendant did not interview Clark.

64. In response to Clark's First Gender Discrimination Complaint, Defendant did not interview witnesses.

65. In response to Clark's First Gender Discrimination Complaint, Defendant did not get a written statement from Clark.

66. In response to Clark's First Gender Discrimination Complaint, Defendant did not get a written statement from Shumate.

67. In response to Clark's First Gender Discrimination Complaint, Defendant did not get a written statement from Peters.

68. In response to Clark's First Gender Discrimination Complaint, Defendant did not get a written statement from witnesses.

69. Defendant did not investigate Clarks First Gender Discrimination Complaint.

70. By not disciplining Shumate at all based on the First Gender Discrimination Complaint, Defendant condoned Shumate's conduct.

71. By not disciplining Peters at all based on the First Gender Discrimination Complaint, Defendant condoned Peters' conduct.

72. By not disciplining Shumate at all based on the First Gender Discrimination Complaint, Defendant allowed Shumate's conduct to continue.

73. By not disciplining Peters at all based on the First Gender Discrimination Complaint, Defendant allowed Peter's conduct to continue.

74. Following Clark's First Gender Discrimination Complaint, Defendant treated Clark unfavorably.

75. Following Clark's First Gender Discrimination Complaint, Defendant began looking for a reason to terminate Clark.

76. Following Clark's First Gender Discrimination Complaint, Defendant began scrutinizing Clark's work.

77. Following Clark's First Gender Discrimination Complaint, Defendant issued unjustified write-ups to Clark.

78. Defendant did not scrutinize male employees' work to the same level as Clark's.

79. Defendant did not scrutinize heterosexual employees' work to the same level as Clark's.

80. Defendant did not issue unjustified write-ups to male employees.

81. Defendant did not issue unjustified write-ups to heterosexual employees.

82. On June 26, 2018, Peters issued Clark a negative performance review. ("First Negative Performance Review.")

83. In the First Negative Performance Review, Peters falsely asserted that Clark had committed over 50 work violations. ("False Assertions.")

84. In the First Negative Performance Review, Peters cited Clark for a work violation during the May Plant Opening, for allegedly failing to record the reservoir level at start up time.

85. In the First Negative Performance Review, Peters cited Clark for a work violation during the May Plant Opening, for allegedly failing to record the time she drew sludge on the run sheet.

86. In the First Negative Performance Review, Peters cited Clark for a work violation During the June Plant Opening, for allegedly failing to record the reservoir level at start up time.

87. In the First Negative Performance Review, Peters cited Clark for a work violation during the June Plant Opening, for allegedly failing to record the time she drew sludge on the run sheet.

88. In the First Negative Performance Review, Peters cited Clark for a work violation during the June Plant Opening, for allegedly failing to put a date on a bucket of chemicals when it was opened.

89. Peters did not reprimand male employees for conduct similar to Clark's during the May and June Plant Opening.

90. Peters did not reprimand heterosexual employees for conduct similar to Clark's during the May and June Plant Opening.

91. Peters did not cite male employees for work violations similar to those Clark was cited for in the First Negative Performance Review.

92. Peters did not cite heterosexual employees for work violations similar to those Clark was cited for in the First Negative Performance Review.

93. During all material events asserted herein, Stagrelee Beabout was employed by Wellston in the water treatment plant.

94. Beabout is similarly situated to Clark.

95. Beabout is male.

7

96. Beabout is heterosexual.

97. Beabout has failed to record the reservoir level at the startup time.

98. Beabaut was not verbally reprimanded for his failure to record the reservoir level at the startup time.

99. Beaubaut did not receive a written reprimand for his failure to record the reservoir level at the startup time.

100. Peters has failed to record the time he drew sludge on the run sheet.

101. Defendant have not verbally reprimanded Peters for his failure to record the time he drew sludge on the run sheet.

102. Defendant have not given a written reprimand to Peters for his failure to record the time he drew sludge on the run sheet.

103. The First Negative Performance Review had no basis in fact.

104. The False Assertions were pretext to give Clark the First Negative Performance Review.

105. Clark contested the First Negative Performance Review.

106. In response to Clark contesting the First Negative Performance Review, Peters told Clark to "Suck it up."

107. Following the First Negative Performance review, Clark complained to Humphreys about Peters and Shumate's discriminatory behavior. ("Second Gender Discrimination Complaint.")

108. Wellston was aware of the Second Gender Discrimination Complaint.

109. In response to Clark's Second Gender Discrimination Complaint, Defendant did not interview Peters.

110. In response to Clark's Second Gender Discrimination Complaint, Defendant did not interview Shumate.

111. In response to Clark's Second Gender Discrimination Complaint, Defendant did not interview Clark.

112. In response to Clark's Second Gender Discrimination Complaint, Defendant did not interview witnesses.

113. In response to Clark's Second Gender Discrimination Complaint, Defendant did not get a written statement from Clark.

114. In response to Clark's Second Gender Discrimination Complaint, Defendant did not get a written statement from Shumate.

115. In response to Clark's Second Gender Discrimination Complaint, Defendant did not get a written statement from Peters.

116. In response to Clark's Second Gender Discrimination Complaint, Defendant did not get a written statement from witnesses.

117. Defendant did not investigate Clarks Second Gender Discrimination Complaint.

118. By not disciplining Shumate at all based on the Second Gender Discrimination Complaint, Defendant condoned Shumate's conduct.

119. By not disciplining Peters at all based on the Second Gender Discrimination Complaint, Defendant condoned Peters' conduct.

120. By not disciplining Shumate at all based on the Second Gender Discrimination Complaint, Defendant allowed Shumate's conduct to continue.

121. By not disciplining Peters at all based on the Second Gender Discrimination Complaint, Defendant allowed Peter's conduct to continue.

122. Following Clark's Second Gender Discrimination Complaint, Defendant treated Clark unfavorably.

123. Following Clark's Second Gender Discrimination Complaint, Defendant continued looking for a reason to terminate Clark.

124. Following Clark's Second Gender Discrimination Complaint, Defendant continued scrutinizing Clark's work.

125. Following Clark's Second Gender Discrimination Complaint, Defendant continued to give Clark unjustified write-ups.

126. On July 10, 2018, Peters issued Clark another negative performance evaluation. ("Second Negative Performance Review.")

127. The Second Negative Performance Evaluation recited the False Allegations in the First Negative Performance Evaluation.

128. In addition to reciting the False Allegations, in the Second Negative Performance review, Peters alleged that on June 14, 2018, Clark inaccurately recorded common turbidity data.

129. Clark had not inaccurately recorded common turbidity data.

130. The Second Negative Performance Review had no basis in fact.

131. The False Assertions were pretext to give Clark the Second Negative Performance Review.

132. Peters did not cite male employees for work violations similar to those Clark was cited for in the Second Negative Performance Review.

133. Peters did not cite heterosexual employees for work violations similar to those Clark was cited for in the Second Negative Performance Review.

134. Following the Second Negative Performance Review, Clark complained to Denise Davis, and Kathy Last Name Unknown.

135. Davis and Kathy work in Wellston's Human Resources Department.

136. Clark complained to Wellston's Human Resources about Shumate and Peter's discriminatory Conduct. ("Third Gender Discrimination Complaint.")

137. In response to Clark's Third Gender Discrimination Complaint, Defendant did not interview Peters.

138. In response to Clark's Third Gender Discrimination Complaint, Defendant did not interview Shumate.

139. In response to Clark's Third Gender Discrimination Complaint, Defendant did not interview Clark.

140. In response to Clark's Third Gender Discrimination Complaint, Defendant did not interview witnesses.

141. In response to Clark's Third Gender Discrimination Complaint, Defendant did not get a written statement from Clark.

142. In response to Clark's Third Gender Discrimination Complaint, Defendant did not get a written statement from Shumate.

143. In response to Clark's Third Gender Discrimination Complaint, Defendant did not get a written statement from Peters.

144. In response to Clark's Third Gender Discrimination Complaint, Defendant did not get a written statement from witnesses.

145. Defendant did not investigate Clark's Third Gender Discrimination Complaint.

146. By not disciplining Shumate at all based on the Third Gender Discrimination Complaint, Defendant condoned Shumate's conduct.

147. By not disciplining Peters at all based on the Third Gender Discrimination Complaint, Defendant condoned Peters' conduct.

148. By not disciplining Shumate at all based on the Third Gender Discrimination Complaint, Defendant allowed Shumate's conduct to continue.

149. By not disciplining Peters at all based on the Third Gender Discrimination Complaint, Defendant allowed Peter's conduct to continue.

150. Following Clark's Third Gender Discrimination Complaint, Defendant treated Clark unfavorably.

151. Following Clark's Third Gender Discrimination Complaint, Defendant continued looking for a reason to terminate Clark.

152. Following Clark's Third Gender Discrimination Complaint, Wellston continued scrutinizing Clark's work.

153. Following Clark's Third Gender Discrimination Complaint, Defendant continued to give Clark unjustified write-ups.

154. On July 16, 2018, Shumate texted Clark, ordering Clark to report to his office.

155. Clark was off work on July 16, 2018.

156. On July 16, 2018, Clark informed Shumate that she was out of town on her day off.

157. July 17, 2018 was Clark's Birthday.

158. Employee's of the City of Wellston are given their birthdays off work.

159. Clark was off work on July 17, 2018.

160. On July 17, 2018, Clark visited her primary care physician.

161. Clark's primary care physician placed Clark on sick leave from July 17, 2018, through July 23, 2018. ("Sick Leave.")

162. Clark's primary care physician placed Clark on Sick Leave due to a gastral intestinal infection, and stress.

163. Clark faxed documentation of her Sick Leave to Charlotte Patrick.

164. Patrick is an Administrative Assistant at Wellston.

165. Clark properly informed Wellston of her Sick Leave.

166. On July 17, 2018, Shumate texted Clark, requesting her to come to his office on July 18, 2018.

167. Clark informed Shumate that she was on Sick Leave.

168. On or around July 18, 2018, Shumate hand-delivered a letter to Clark's home.

169. The letter Shumate delivered contained a termination notice. ("Termination Letter.")

170. The Termination Letter was dated July 16, 2018.

171. According to Defendant, Clark was terminated due to poor work performance. ("Stated Basis for Termination.")

172. Defendant's assertion of the Stated Basis for Termination has no basis in fact.

173. Defendant's assertion of Stated Basis for Termination did not actually motivate Defendant' decision to terminate Clark.

174. Defendant's assertion of the Stated Basis for Termination was insufficient to motivate the termination of Clark.

175. Defendant's assertion of the Stated Basis for Termination was pretext to terminate Clark.

176. Upon information and belief, Defendant permitted similarly-situated, male employees to retain their employment despite having work performance issues that were similar to or worse than Clark's.

177. Upon information and belief, Defendant permitted similarly-situated, heterosexual employees to retain their employment despite having work performance issues that were similar to or worse than Clark's.

13

178. The above facts demonstrate that Defendant engaged in a pattern and practice of gender discrimination.

179. The above facts demonstrate that Defendant engaged in a pattern and practice of sexual orientation discrimination.

180. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful retaliation.

181. There was a causal connection between Clark's gender and Defendant's termination of Clark.

182. There was a causal connection between Clark's sexual orientation and Defendant's termination of Clark.

183. There was a causal connection between Clark's First, Second, and Third Gender Discrimination Complaints and Defendant's termination of Clark.

184. As a direct and proximate result of Defendant's conduct, Clark suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq*.

185. Clark restates each and every prior paragraph of this Complaint as if it were fully restated herein.

186. Clark is a member of a statutorily protected class based on her gender under 42 U.S.C. § 2000e-2 et seq.

187. Wellston treated Clark differently than other similarly situated employees based on her gender.

188. Wellston discriminated against Clark on the basis of her gender throughout her employment.

189. Wellston treated Clark differently due to its perception that Clark did not conform to the female gender, or how a female should act, or be married to.

190. Defendant terminated Clark's employment without just cause.

191. Defendant terminated Clark's employment based on her gender.

192. Defendant terminated Clark's employment based on her sexual orientation.

193. Defendant's discrimination against Clark based on her gender violates 42 U.S.C. § 2000e-2 et seq.

194. Clark suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2 et seq.

195. As a direct and proximate result of Defendant's conduct, Clark suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RETALIATORY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq.*

196. Clark restates each and every prior paragraph of this Complaint as if it were fully restated herein.

197. As a result of the Defendant's discriminatory conduct described above, Clark complained about the gender discrimination she was experiencing.

198. Subsequent to Clark's First, Second, and Third Gender Discrimination Complaints, Clark received unreasonably low-performance evaluations and unjustified write-ups.

199. Subsequent to Clark's First, Second, and Third Gender Discrimination Complaints, Clark was terminated without just cause.

200. Wellston's actions were retaliatory in nature based on Clark 's opposition to the unlawful discriminatory conduct.

201. Wellston's actions were retaliatory in nature based on Clark's opposition to the unlawful discriminatory conduct.

202. As a direct and proximate result of Wellston's retaliatory discrimination against and termination of Clark, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

203. As a direct and proximate result of Wellston's retaliatory discrimination against and termination of Clark, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT III: GENDER DISCRIMINATION IN VIOLATION OF O.R.C. § 4112.01 *et seq.***

204. Clark restates each and every prior paragraph of this Complaint as if it were fully restated herein.

205. Clark is a member of a statutorily protected class based on her gender under R.C. § 4112.01 *et seq*.

206. Defendant treated Clark differently than other similarly situated employees based on her gender.

207. Defendant discriminated against Clark on the basis of her gender throughout her employment with the company.

208. Defendant treated Clark differently due to their perception that Clark did not conform to the female gender, or how a female should act, or be married to.

209. Defendant terminated Clark's employment without just cause.

210. Defendant terminated Clark's employment based on her gender.

211. Defendant' discrimination against Clark based on her gender violates R.C. § 4112.01 *et seq*.

212. As a direct and proximate result of Defendant's conduct, Clark suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

213. Clark restates each and every prior paragraph of this Complaint as if it were fully restated herein.

214. As a result of the Defendant' discriminatory conduct described above, Clark complained about the gender discrimination she experienced.

215. Subsequent to Clark's First, Second, and Third Gender Discrimination Complaints and/or managers, Clark received unreasonably low-performance evaluations and unjustified write-ups.

216. Subsequent to Clark's First, Second, and Third Gender Discrimination Complaints, Clark was terminated without just cause.

217. Defendant' actions were retaliatory in nature based on Clark 's opposition to the unlawful discriminatory conduct.

218. Defendant' actions were retaliatory in nature based on Clark's opposition to the unlawful discriminatory conduct.

219. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

220. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Clark, she suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### DEMAND FOR RELIEF

WHEREFORE, Clark demands from Defendant the following:

17

(a) Issue an order requiring Defendant to restore Clark to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Clark for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys fees and non-taxable costs for Clark claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/Matthew G. Bruce_____
Matthew G. Bruce (0083769)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  matthew.bruce@spitzlawfirm.com
        paul.filippelli@spitzlawfirm.com

*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Amanda Clark demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)